In the Matter of the Estate of PHILIP PUGSLEY, Deceased.

### No. 1541.  (76 Pac. 560.)

1. **Decedent's Estate: Distribution: Allowance for Support: Matter of Right.**

   Revised Statutes 1898, section 3846, provides that when a person dies, leaving a surviving wife, she shall be entitled to possession of the homestead and to use the property exempt from execution till otherwise directed, and during administration shall receive such allowance out of the estate as the court may deem reasonable and necessary for her support. *Held* that, though a portion of the real estate of a decedent is set aside to the widow as her share of the estate, she has an absolute right to the allowance during administration; the amount being a matter in the court's discretion.

2. **Same: Amount: Discretionary.**

   In fixing the amount of the allowance for support during administration of the estate of a decedent, the age of the survivor or survivors, their health, social position, and standing, the education of the children, the value of the estate, and its solvency or insolvency, should be taken into consideration.

(Decided April 20, 1904.)

Appeal from the Third District Court, Salt Lake County.—*Hon. W. C. Hall*, Judge.

Proceedings in the estate of Philip Pugsley, deceased. From an order refusing an allowance for support during the administration Martha Pugsley, widow of deceased, appealed.

REVERSED.

*Chas. W. Boyd, Esq.*, for appellant.

*N. V. Jones, Esq.*, for respondents and objectors.

*Messrs. Wilson & Smith* for executors.

BARTCH, J.—This appeal is from an order of the district court, sitting as a court of probate, denying and dismissing the petitions of the appellant, Martha Pugsley, widow of Philip Pugsley, deceased, for family allowance pending the administration of the estate. It appears from the record that Philip Pugsley died testate, August 7, 1903, in Salt Lake City, leaving his wife, the appellant, a number of children, and Clarissa Ames Pugsley, his plural wife, who are his heirs and legatees, surviving him. The inventory and appraisement of the decedent's property showed real estate of the value of $16,700, and personal property of the value of $34,-415.81. His will, which was duly admitted to probate, made certain bequests—among others, directing his executors, who were to hold his property in trust, to pay his wife, the appellant, $50 per month during her natural life, from the time of his death, and to his plural wife $40 per month, and, if a surplus of income remained each year after payment of taxes, expenses, etc., to divide one-half of such surplus between his wife and plural wife, in the same proportion as the monthly payments. The appellant elected to renounce the provisions of the will, and on September 25, 1903, filed a petition for a partition of the real estate of which the testator died seized; asking that one-third of the real estate be segregated and assigned to her. Thereupon commissioners were appointed, who on October 26, 1903, reported to the court the apportioning and setting over to the appellant of certain real estate, appraised at $4,-200. This report was confirmed Nov. 26, 1903. Before any real estate was apportioned and set over to her, the appellant filed her petition for family allowance of $80

per month for maintenance and support. To this petition the plural wife and her children filed an answer, protesting against the granting of a family allowance to the appellant. The hearing upon the issues thus raised was on October 9th set for December 14, 1903, and on the same day the court made an allowance to the widow of $50 in gross, pending the hearing. On November 18th the widow filed another petition for a further temporary allowance of $300 pending the hearing of the first petition, which was also objected to, and at the final hearing both the petitions were denied and dismissed.

The appellant insists that this action of the court was erroneous, and, in support of her contention, relies upon section 3846, Rev. St. 1898, which, upon the subject of "Family Support," provides: "When a person dies leaving a surviving wife or husband or minor children, they shall be entitled to remain in possession of the homestead and to the use of the property exempt from execution until otherwise directed by the court; and during administration shall receive such allowance out of the estate as the court may deem necessary and reasonable for their support. Such allowance may date from the death of the decedent, and in insolvent estates shall not continue for longer than one year after the granting of letters, and must be paid in preference to all other charges except expenses of the funeral and of administration." It is contended for the appellant that, under this statute, the widow has an absolute right to a family allowance during the administration of the estate of her deceased husband, notwithstanding that a portion of the real estate was set apart to her as her share of the estate. The respondents insist that the setting apart and acceptance by the widow of such portion, she having renounced her rights under the will, is a waiver and bar to any subsequent allowance to her out of the estate, and that the purpose of family allowance is to provide for the "present support" of the widow or children until such time as the court may set

apart to her her distributive share in the estate. We think the contention of the appellant is well taken, and that the position of the respondents is not sound. We are not disposed to adopt such a narrow and rigid construction of the statute as is insisted upon by them—a construction so utterly at variance with the spirit of legislative liberality so manifest from the context. The construction insisted upon would do violence alike to the spirit and terms of the statute. The ground upon which this contention is based, that the widow has received her share of the real estate of the deceased, is not materially different in principle from that of instances where it is insisted that the widow is not entitled to family allowance because she has abundant means of her own for her support. The statute was not enacted merely for the purpose of providing properly for indigent widows and children during the administration of their decedents' estates, but for all persons mentioned therein, regardless of their ability to provide for themselves out of their own private property. Such statutes, like homestead and exemption laws, are enacted because of a benevolent and humane consideration of the helpless condition and distress of families occasioned by the death of those who had furnished their support and protection, and they must be construed with the same spirit of liberality that prompted their enactment. By the enactment of such laws the Legislature, under a wise public policy, seeks to guard and protect the family, which constitutes the foundation of the State itself, during the trying period of affliction and need caused by the death of the one who directed the family affairs. The statute under consideration, as will be seen by an examination of it, does not make dependence on an allowance a prerequisite to such an allowance. It grants to the surviving wife or husband or children who may constitute the family of the deceased the use of the homestead and property exempt from execution until the court shall otherwise direct, and then provides that during admin-

istration they "shall receive such allowance out of the estate as the court may deem necessary and reasonable for their support." The language of the first part of this last provision is express and mandatory; that of the latter part, discretionary.

Upon proper application therefor, some allowance must be granted as of absolute right; but the amount thereof rests within the sound discretion of the court, and is not subject to interference by the appellate court, except in case of a clear abuse of discretion.    The period for which an allowance must be granted, under this statute, is "during administration" of the estate. In fixing the amount of the allowance, the ages of the survivor or survivors, their health, their social position and standing, the education of the children, the value of the estate, and its solvency or insolvency, are proper subjects for consideration; but the court has no right to refuse an allowance altogether, and thereby make the support of the family out of the estate, while administration continues, depend upon conditions which the Legislature did not see fit to impose. "In determining," says Judge Woerner, "the amount necessary for such purpose, regard may be had to the state of the health, age, and habits of the widow, the number and age of the children immediately dependent upon her, as well as the value of the estate, and of her dower and distributive share therein.    It may also be considered whether or not she is accustomed to hard labor, and thus enabled to support herself, or if, by reason of ill health or other circumstances, she is unable to do so. A smaller amount will be proper in the former case than that which may be necessary in the latter.    When the statute fixes the time for the duration of which the allowance is to be made, it must, of course, be sufficient to secure the reasonable comfort of the family during the whole of such period, if used with ordinary prudence and economy.    If the estate is large, apparently solvent, and the allowance merely an anticipation of the widow's distributive share, a more liberal allowance will

be justified than where it is small or insolvent; and what would be a reasonable allowance for one accustomed to privation and labor might be very unreasonable for one raised in affluence.'' 1 Woerner, Am. Law Adm., section 79.

In the case of In re Lux, 100 Cal. 593, 35 Pac. 341, the Supreme Court of California, after holding, in reference to a similar provision of statute for family allowance, that ''its language is express and mandatory,'' said: ''The allowance is to be sufficient to provide all the necessaries of life, and this will include all those things which are reasonable and proper for use in the home and in social intercourse, in view of the condition and value of the estate and the station and surroundings of the family.'' The question here presented was before the Supreme Court of Vermont in Sawyer's Heirs v. Sawyer, 28 Vt. 245. There the statute provided that ''the widow and children, constituting the family of the deceased, shall have such reasonable allowance out of the personal estate, as the probate court shall judge necessary for their maintenance during the progress of the settlement of the estate, according to their circumstances.'' It was urged that the widow was not entitled to an allowance, because since her husband's death she was in receipt of a pension from the United States, and was living with her father, who was a man of wealth, and made no charge against her for support. The court held that the financial ability of the widow to support herself without aid from the estate was immaterial, that the statute was one of general application, and that the probate court had a discretion only as to the amount of the allowance, and could not refuse it altogether. Mr. Justice Redfield, delivering the opinion of the court, said: ''The exceptions claimed in the present case are, first, on the ground of the pension which the widow obtained, as such, upon the decease of her husband. This is not different, in principle, from her being possessed of ability to maintain herself in any other mode, so as not to require assis-

tance from the estate.   And indeed the general ability of the appellee, or the widow in this case, from her living with her father, and the wealth of the family, and the very great improbability of his making any personal claim against his daughter for her board, was also alluded to in the argument, and is stated in the case, and seems to us to come fairly under consideration in the same connection.   But we are not prepared to say that any such exception can fairly be ingrafted upon the statute.  If it had been the purpose of the Legislature to allow maintenance only in the case of such widow and children as were without the means of subsistence in any other mode, it is difficult to conjecture how it occurred that the provision should have been expressed in the general and unlimited manner it here is.   It is incomprehensible that, if the provision were intended only for the indigent and necessitous, it should have been made general.   It is at all events, sufficient for us that the provision being general, it must be allowed to have a general application.''   1 Woerner, Am. Law Adm., 77-83, 87, 88; Griesmer v. Boyer & Rex, 13 Wash. 171; In re Welch's Estate, 106 Cal. 427, 39 Pac. 805; Strawn v. Strawn, 53 Ill. 263; Cheney v. Cheney, 73 Ga. 66; Brown v. Hodgdon, 31 Me. 65.

In this case, as appears from the record, the widow is about 75 years old, and all the children and legatees are over the age of maturity—the oldest being about 51 years old—and there is nothing to show that they are not all able to support themselves.   The appraised value of the estate is over $50,000—savings of a lifetime which this aged wife and mother assisted in accumulating, doubtless in the hope of having ample in her old days for her support and maintenance.   Under the will, however, this wife of more than half a century found the provision for her so meager that she chose to renounce it and rely upon the mercy of the law of inheritance, and, as a result, received, the respondents say, for her portion, real estate of the value of $4,200; and when, in addition to this paltry sum, the aged wife and mother

comes into court and asks for but a reasonable allowance out of her own savings for her support during administration, she is met with resistance, on legal technicalities without merit, and a refusal. There seems to be nothing in the record to justify this. In our judgment, this is a case in which the circumstances warrant a liberal allowance for the support of the widow during the whole time of administration.

The judgment is reversed, with costs, and the cause remanded, with directions to the court below to set aside the order refusing an allowance, and proceed in accordance herewith. It is so ordered.

BASKIN, C. J., and McCARTY, J., concur.